WESTMINSTER FINANCIAL COMPANIES, INC. et al., Appellants,

v.

BRIARCLIFF CAPITAL CORPORATION et al., Appellees.

[Cite as Westminster Fin. Cos., Inc. v. Briarcliff Capital Corp., 156 Ohio App.3d 266, 2004-Ohio-782.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20037.

Decided Feb. 20, 2004.

Scott A. Kane and Pierre H. Bergeron, for appellants.

Douglas R. Jennings, for appellee Briarcliff Capital Corporation and Jack Spiegelman.

Gregory K. Pratt and James Papakirk, for appellee John D. Kinder.

BROGAN, Judge.

{¶ 1} This case arises from a failed merger between Westminster Financial Companies, Inc. ("Financial") and Briarcliff Capital Corporation ("Briarcliff"). According to the complaint, Financial is a financial services company that manages and co-manages brokerage accounts for clients. These accounts are carried by a wholly-owned subsidiary, Westminster Securities, Inc. ("Securities"), which is a broker-dealer registered with the National Association of Securities Dealers ("NASD"). Westminster Financial Advisory ("Advisory") is another wholly-owned subsidiary of Financial. Advisory's role is to provide fee-based financial advice to customers of Securities. Financial and Advisory are not members of NASD.

{¶ 2} Individual account managers (registered representatives) cultivate client relationships and determine proper investment policy. One such individual was John Kinder, who was a NASD-registered representative and was also on Financial's board of directors.

{¶ 3} In November 2000, Financial began negotiating a merger with Briarcliff. Like Securities, Briarcliff was a broker-dealer registered with NASD to hold brokerage accounts and to trade securities for its customers through registered representatives. At the time of the merger discussions, Jack Spiegelman was the president of Briarcliff.

{¶ 4} In August 2001, Financial and Briarcliff executed a "letter agreement," under which Advisory would pay Briarcliff to manage $25,000,000 in assets held in accounts carried by Securities. As part of the agreement, Spiegelman was to serve on Financial's board of directors. The letter agreement also contained a non-compete clause affecting both Financial and Briarcliff.

{¶ 5} A dispute apparently exists concerning whether the letter agreement was effective or was simply a proposed agreement. However, this dispute is not

material for purposes of the present appeal. The complaint alleges that following a modification of the agreement, Financial tendered 25 client accounts with assets in excess of $10,000,000 to Briarcliff. However, instead of performing, Briarcliff allegedly repudiated the agreement. Shortly thereafter, Kinder resigned as a Westminster registered representative and joined Briarcliff.

{¶ 6} Subsequently, Financial and Advisory filed suit against Spiegelman, Kinder, and Briarcliff, alleging such grounds as breach of fiduciary duty, breach of contract, promissory estoppel, tortious interference, and wrongful misappropriation of trade secrets. Securities was not named as a party to the action.

{¶ 7} Kinder filed an answer and counterclaim but did not raise the issue of arbitration. Briarcliff and Spiegelman filed a motion to join Securities as a necessary party, to compel arbitration, and to dismiss the complaint. After considering only the complaint and the memoranda filed by the respective parties, the trial court granted the motion in part. First, the court found that Securities was a necessary party under Civ.R. 19(A) because it was a registered broker-dealer. The court noted that unlike Securities, neither named plaintiff could legally hold accounts or employ registered representatives. The court thus concluded that all claims dealing with transfers of accounts and employment of registered representatives arose from rights belonging to Securities, not the named plaintiffs.

{¶ 8} The court went on to grant the motion to compel arbitration, based on the fact that Securities and Briarcliff were both member firms of the NASD, which required arbitration of all claims related to the business of members. The court then placed the remaining claims on administrative stay in lieu of dismissal until the arbitration was resolved. Financial and Advisory appeal from the court's judgment, claiming in a single assignment of error that "[t]he trial court erred by compelling arbitration and staying proceedings."

{¶ 9} After considering the assignment of error, we find that the matter must be remanded for a limited hearing on one specific issue. In all other respects, the judgment of the trial court was correct.

I

{¶ 10} The first subject of dispute concerns the proper standard of review. Financial and Advisory contend that de novo review should apply to the decision on the motion to compel arbitration, while appellees claim that the proper standard is abuse of discretion. Generally, we review such matters for abuse of discretion. See, e.g., *Lindsey v. Sinclair Broadcast Group, Inc.*, Montgomery App. No. 19903, 2003-Ohio-6898, 2003 WL 22972357, at ¶ 19; and *Baker v. Schuler*, Clark App. No. 02CA0020, 2002-Ohio-5386, 2002 WL 31243491, at ¶ 26.

However, we have applied de novo review where questions of law are involved. See *McManus v. Eicher,* Greene App. No.2003–CA–30, 2003-Ohio-6669, 2003 WL 22927749, at ¶ 11 (holding that arbitrability of a claim is a question of law and is reviewed de novo).

{¶ 11} For purposes of the present case, de novo review is appropriate because the trial court focused solely on the respective legal status of the parties. The court also relied strictly on facts in the pleadings and did not hold an evidentiary hearing. As a result, there is no reason to give the court's decision a high degree of deference.

{¶ 12} Turning to the merits, appellants, Financial and Advisory, claim that the matters the trial court relied on are irrelevant to the causes of action alleged in the complaint. Specifically, appellants argue that their ability to hold accounts and their status as registered representatives are irrelevant to their breach-of-contract action. They also note that they did not mention Securities in the complaint. Consequently, appellants feel that the trial court improperly construed facts in the appellees' favor to find that the only material allegations of damages in the complaint referred to Securities.

{¶ 13} In contrast, appellees contend that Securities was correctly joined as a necessary party. Appellees further argue that once Securities was joined as a party, arbitration was required under the NASD Code of Arbitration.

{¶ 14} Under R.C. 2711.02(B):

{¶ 15} "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."

{¶ 16} In the present case, the parties themselves did not enter into a written agreement for arbitration. Instead, the obligation arose from the NASD Code of Arbitration ("NASD Code"), which requires "arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member." NASD Code, Section 10101. Because NASD is "a self-regulating organization within the terms of the Securities Exchange Act of 1934 * * *, each of its members * * * is contractually bound by its regulations—including all of its arbitration provisions." *First Liberty Invest. Group v. Nicholsberg* (C.A.3, 1998), 145 F.3d 647, 650. Therefore, the arbitration

requirement can be enforced, even though Securities and Briarcliff did not enter into a separate written agreement to arbitrate.

{¶ 17} While the named plaintiffs were not NASD members, Securities was a NASD member and was added as a party by the trial court, pursuant to Civ.R. 19(A). Therefore, the first issue to be addressed is whether the trial court properly joined Securities.

{¶ 18} Under Civ.R. 19(A), "A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties." According to the Ohio Supreme Court, "Civ.R. 19(A) encourages, and Ohio decisional law favors, a policy of liberally granting joinder." *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 184, 12 OBR 246, 465 N.E.2d 1298. In *Hambleton*, the Ohio Supreme Court found no abuse of discretion where the joined party was integrally involved in the dealings of the plaintiff and defendant, and joinder would not prejudice the objecting party. Id.

{¶ 19} Under this standard, the trial court did not abuse its discretion in joining Securities. Although appellants objected to joinder, they did not dispute the facts ultimately relied on by the trial court, i.e., that neither named plaintiff could hold brokerage accounts or employ registered representatives. As we said, appellants claim that these facts are irrelevant because the letter agreement and dealings between the parties related to the provision of financial advisory services to clients, not to holding accounts as a broker. However, this is not true, as the letter agreement specifically indicates that Securities will carry the accounts that are the subject of the agreement.

{¶ 20} Furthermore, the complaint asserts claims for wrongful misappropriation of clients and tortious interference with client relationships. Because Securities carried the client accounts that are the subject of these claims, it clearly was "integrally involved" in the dealings of Financial, Advisory, and Briarcliff. *Hambleton*, 12 Ohio St.3d at 184, 12 OBR 246, 465 N.E.2d 1298.

{¶ 21} We also find that no prejudice occurred as a result of joinder. While appellants undoubtedly feel aggrieved by the stay, prejudice in these situations relates to untimeliness of the joinder request, not to a particular party's reasons for opposing joinder. For example, in *Studier v. Taliak* (1991), 74 Ohio App.3d 512, 516, 599 N.E.2d 718, the trial court did not abuse its discretion in rejecting a motion to add parties, because the motion was made only four days before trial. In contrast, the parties in the present case sought joinder at the earliest possible point. Accordingly, the trial court did not abuse its discretion in ordering Securities to be joined as a party.

{¶ 22} Although joinder was proper, that does not mean that Securities is the only party to whom the claims belong. We mention this point because appellees have claimed in their brief that Securities is the only party entitled to bring claims for the loss of its registered representatives and brokerage accounts. This contention appears to be based on comments the trial court made in its decision, i.e., that under Ohio law, a salesperson must be employed by the licensed dealer specified in the salesperson's license and that only a licensed dealer can maintain brokerage accounts.

{¶ 23} The trial court did not cite any particular case law or statutes to support its comments. However, in their brief, appellees cite R.C. 1707.16(A), 1707.01(E), and 1707.14(A). Based on these statutes, appellees assert that Securities was the only party entitled to bring claims against Briarcliff, Kinder, and Spiegelman. We disagree, as that is not what the statutes say.

{¶ 24} According to R.C. 1707.16(A), "Every salesperson of securities must be licensed by the division of securities and shall be employed, authorized, or appointed only by the licensed dealer specified in the salesperson's license." R.C. 1707.14(A)(1) further provides that "[n]o person shall act as a dealer, unless the person is licensed as a dealer by the division of securities." And finally, R.C. 1707.01(E)(2) defines a "licensed dealer" as "a dealer licensed under this chapter."

{¶ 25} Based on these statutes and the somewhat scanty facts revealed to date, we assume that John Kinder was a securities salesperson and that he could be employed only by the licensed dealer specified in his license. We also assume that Securities was a licensed dealer under R.C. Chapter 1707, as no one disputes that fact. The record is silent as to the identity of the licensed dealer on Kinder's license. However, since Kinder was on the board of directors for Financial, we assume that Securities was the licensed dealer specified on Kinder's license.

{¶ 26} What this means, if these assumptions are correct, is that Kinder would have been employed as a securities salesperson only by Securities. Any claims for breach of that employment agreement (whatever it might have been) would likely be brought by Securities. However, there may be other claims related to Kinder's employment. For example, appellants point out that as a member of the Financial board of directors, Kinder owed certain fiduciary duties toward appellants. The complaint did allege such a breach of fiduciary duty. Based on the state of the record, no one can say with certainty that appellants, i.e., Financial and Advisory, lacked any type of claim against Kinder, simply because he may have been employed by Securities.

{¶ 27} However, unlike appellees, we do not interpret the trial court's comments to mean that Securities was the only party who had potential claims against the appellees. Instead, the court simply concluded, on the record before

it, that Securities should be added as a party. While we agree, we also note that R.C. 1707.14 contains exceptions that may apply to this case. Specifically, R.C. 1707.14(A)(1) says that "[n]o person shall act as a dealer, unless the person is licensed as a dealer by the division of securities, *except in the following cases: (a) When the person is transacting business through or with a licensed dealer * * *.*" (Emphasis added.) If this exception applies, Financial and Advisory may have been statutorily permitted to act as "dealers" and may have claims that arose in that context. Again, the record is not complete, and we express no opinion on these matters. We make the point simply to prevent our decision from operating as a holding that Financial and Advisory do not have any potential claims against appellees.

{¶ 28} Essentially, the trial court simply found the evidence sufficient to justify adding Securities as a party. Appellants object to this because they believe that the trial court was required to construe the allegations in the pleadings in their favor. That would be true if the court granted a motion to dismiss under Civ.R. 12(B)(6). However, the court did not grant a motion to dismiss; instead, it ordered all claims between Securities and Briarcliff to arbitration and placed the case on administrative stay pending the results of arbitration. The court also noted in its entry that the case could be reactivated for good cause shown, upon plaintiffs' motion. Consequently, if arbitration does not fully resolve all points of conflict between the parties, appellants may ask for the case to be reactivated.

## II

{¶ 29} Appellants additionally challenge the order compelling arbitration because Financial and Advisory were not parties to an arbitration agreement. In responding to this claim, appellees make two main arguments. First, they contend that all claims in the complaint fall within the scope of issues required to be arbitrated under the NASD Code. Second, they argue that Financial and Advisory are "unregistered affiliates" of Securities and are required by the NASD Code to submit to arbitration.

{¶ 30} For the reasons already discussed, we do not necessarily agree that all of the claims in the complaint belong to Securities. This does not mean that arbitration was improperly ordered or that the civil action should not have been stayed pending arbitration. What it does mean is either that some claims may still be viable after arbitration—or that Financial and Advisory should be joined in the arbitration. These points are directly related to appellees' contention that Fidelity and Advisory are proper parties to the arbitration, even though they are not NASD members.

{¶ 31} Concerning the duty of unregistered affiliates to arbitrate, Section 10201 of the NASD Code, which is entitled "Required Submission," states in subsection (a):

{¶ 32} "Except as provided in paragraph (b) or Rule 10216 [both of which relate to statutory discrimination claims], a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member."

{¶ 33} Relying on *McMahan Securities Co. v. Forum Capital Markets, L.P.* (C.A.2, 1994), 35 F.3d 82, appellees argue that Financial and Advisory are "certain others" who are required to arbitrate because they are closely affiliated with the parties enmeshed in the present dispute. In *McMahan,* a securities company that was also a NASD member filed suit against various individuals and partnerships, alleging misappropriation of trade secrets, unfair competition, breach of contract, and breach of fiduciary duty. Id., 35 F.3d at 84–85. The defendants moved to stay the proceedings and compel arbitration, but the district court denied the motion, finding that arbitration was not required. Id., 35 F.3d at 85. However, the Second Circuit Court of Appeals reversed, noting:

{¶ 34} "Under the NASD Code, two conditions must be met in order for a securities industry dispute to be arbitrable. The first is a restriction on the parties: The dispute must be 'between or among members and/or associated persons, and/or certain others.' The second is a restriction on the subject matter: the substantive disputes must be ones 'arising in connection with the business' of members or arising 'in connection with the activities of such associated person(s).' " Id., 35 F.3d at 86.

{¶ 35} Concerning the first condition, the Second Circuit found that the NASD Code does not require an "associated person" to be a natural person, at least where the entity in question is a partner of a member. Id., 35 F.3d at 87. As a result, the court concluded that even corporate entities could qualify as associated persons. The court thus found that one plaintiff and several defendants who were not natural persons would be "associated persons" of NASD members for purposes of arbitration. Id., 35 F.3d at 87.

{¶ 36} The Second Circuit then went on to consider the status of a limited partner that was neither a NASD member nor an associated person of any

member. Despite this, the court found that the limited partner was "sufficiently immersed in the underlying controversy" to fit within the category of "certain others" in Section 10201 (then Section 8 of the NASD Code). In this regard, the Second Circuit concluded:

{¶ 37} "A person who is neither a member nor an associated person is nevertheless appropriately joined in the arbitration where that party plays an active role in the securities industry, is a signatory to a securities-industry arbitration agreement (or is an instrument of another party to the arbitration), and has voluntarily participated in the particular events giving rise to the controversy underlying the arbitration." Id., 35 F.3d at 88.

{¶ 38} Accordingly, the Second Circuit reversed the denial of arbitration and ordered the district court to direct the parties to proceed to arbitration. Id., 35 F.3d at 89.

{¶ 39} Appellees urge us to find that Financial and Advisory are "certain other" parties who must be joined in the arbitration. Financial and Advisory contend, however, that *McMahan* has been rejected by other courts and has also been rendered irrelevant by amendments to the NASD Code. We agree that the NASD Code has been amended since *McMahan* to eliminate corporate entities as "associated persons" under Section 10201. However, the part of the NASD Code that pertains to the status of "certain others" has not been changed.

{¶ 40} Several decisions have commented on the fact that Section 10201 was amended after *McMahan* to exclude corporate entities from the category of "associated persons." See, e.g., *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer* (C.A.1, 2000), 226 F.3d 15, 19–20, and fn. 7; and *Ladd v. Scudder Kemper Investments, Inc.* (2001), 433 Mass. 240, 244–245, 741 N.E.2d 47. The Second Circuit Court of Appeals has also noted, without discussing the post-*McMahan* amendments, that "Article I of the NASD By-laws defines 'persons associated with a member' to exclude corporate entities." *Burns v. New York Life Ins. Co.* (C.A.2, 2000), 202 F.3d 616, 620. Therefore, there seems to be no real dispute that under the NASD Code as it currently exists, the term "associated persons" under Section 10201 is limited to natural persons, not entities. As a result, neither Financial nor Advisory could be considered a person associated with Securities for purposes of Section 10201.

{¶ 41} However, the amendment is irrelevant, because appellees are not claiming that Financial and Advisory are associated persons. Instead, they claim that Financial and Advisory fit within the category of "certain persons" in Section 10201 who must have their claims arbitrated. As we mentioned, *McMahan* concluded that corporate affiliates of NASD members may be joined in arbitrations, as "certain others," if they (1) play an active role in the securities industry; (2) are signatories to a securities-industry arbitration agreement (or are instru-

ments of another party to the arbitration); and (3) have voluntarily participated in the events giving rise to the controversy underlying the arbitration. *McMahan,* 35 F.3d at 88. According to Financial and Advisory, two subsequent decisions have questioned this aspect of *McMahan*'s holding. These decisions are *World Fin. Group, Inc. v. Steele* (Aug. 15, 2002), S.D. Ind. No. IP 02–248–CH/K, 2002 WL 31045354; and *Sand Bros. & Co., Ltd. v. Al Nasser* (Jan. 5, 2004), S.D.N.Y. No. 03 Civ. 8128(BSJ), 2004 WL 26550. We agree that these cases reject *McMahan,* but we do not agree that the rejection was correct.

{¶ 42} In *World Financial Group,* the plaintiff (World Financial) brought an action in federal court against United Securities Group and its officers, claiming that they had tortiously induced World Financial's salespeople to breach certain employment-related agreements. Id. at 2002 WL 31045354, * 1. After the defendants moved to dismiss or stay the case pending arbitration, the district court denied the motion (except on one ground that is not relevant to our discussion). Id.

{¶ 43} World Financial was not a member of NASD, and both sides agreed that the it did not qualify as an "associated person," since the term was limited to natural persons after the amendment of the NASD Code. Id. at * 3. However, the district court went on to consider whether World Financial could be compelled to arbitrate because it was a "certain other" under Section 10201. Id. In this regard, the district court stated that *McMahan* was correct when it found that affiliates could be permissibly joined in arbitration proceedings. However, the district court also observed:

{¶ 44} "*McMahan* * * * went further, however, in holding that a plaintiff was required to arbitrate its claim with a 'certain other.' That portion of *McMahan* is no longer viable because the *McMahan* court was applying an earlier version of the NASD's arbitration rules, which included claims involving 'certain others' among the claims subject to mandatory arbitration. See 35 F.3d at 86 (quoting earlier version of Section 8 of NASD Code of Arbitration). The current version, set forth in Rule 10201, plainly excludes 'certain others' from those who may insist on or must submit to mandatory arbitration." Id. at * 3.

{¶ 45} Accordingly, the district court in *World Financial Group* found that the action should not be dismissed or stayed pending arbitration. Id. at * 4. Subsequently, in *Sand Bros. & Co., Ltd. v. Al Nasser,* the United States District Court for the Southern District of New York reached a similar conclusion when it considered a motion to enjoin an arbitration. In *Sand Bros.,* a customer began NASD arbitration against a brokerage firm, the firm's employees, two NASD registered representatives, and some entities who were affiliates of the brokerage firm. Although the brokerage firm belonged to NASD, the entities were not members. As a result, the parties to the arbitration, other than the two

registered representatives, filed an action in federal district court, seeking to enjoin the arbitration. *Sand Bros.*, 2004 WL 26550, * 1–2.

{¶ 46} Again, the district court correctly found that the affiliated entities could not be compelled to arbitrate as "associated persons," due to the amendment of the NASD Code. Id. at * 3–4. However, the court also went on to reject the claim that the entities could be compelled to arbitrate under *McMahan,* as "certain others." In this regard, the court simply cited *World Financial Group* for the proposition that "the current version does not include 'certain others' as those who may insist on or must submit to mandatory arbitration." Id. at * 4.

{¶ 47} After comparing the code sections quoted in *McMahan* with the current versions of those sections, we have not been able to find any amendment that changed the meaning of the phrase "certain others." Specifically, the parts of the NASD Code cited in *McMahan* were Sections 1 and 8 of the Arbitration Code, and Sections 1101(i) and (m) of the NASD Manual. Those sections can now be found in the NASD Manual or Code as Sections 10101 (Matters Eligible for Submission), 10201 (Required Submission), 1020(i) (member), and 1011(b) (associated person). The only pertinent change has been to the definition of "associated persons." As we said, no one appears to dispute that this phrase is now restricted to natural persons and does not include corporate entities.

{¶ 48} In contrast, the phrase "certain persons" has remained unchanged at all pertinent times. In fact, the phrase "certain others" appears only once in the manual (formerly in Section 8, now Section 10201), and does not differ from how it appeared when *McMahan* was decided. Therefore, we find no legal basis for the conclusions reached in *World Financial Group* and *Sands Bros. & Co.* and decline to follow these cases.

{¶ 49} As an additional matter, there is a factual distinction, at least between the present case and *World Financial Group.* Due to the joinder of Securities, the civil action and referral to arbitration involve the claim of one NASD member (Briarcliff) against another member (Securities). However, in *World Financial Group,* the civil action did not involve NASD members on each side. To the contrary, the case involved one NASD member attempting to force a non-NASD member to arbitration, based on the fact that the non-member was affiliated with a member as a "certain other," when the member was not a party to the lawsuit. The same situation would exist in the present case if the court had not joined Securities as a party. However, that is not what happened.

{¶ 50} In researching, we found several recent decisions that have approved or have specifically applied *McMahan*'s interpretation of "certain others." In *Flynn v. Greenwich Global* (2002), 32 Conn. L. Rptr. 397, 2002 WL 1573422, the Superior Court of Connecticut concluded that while *McMahan*'s reasoning "regarding the inclusion of corporate entities as 'persons associated with a member'

has effectively been overruled by precedent * * *, the reasoning of the rest of the case remains intact." 2002 WL 1573422, *4, fn. 6. Accordingly, the superior court applied the criteria outlined in *McMahan* to decide whether a non-NASD member could be compelled to join an arbitration between two members. Id. The court found that the circumstances of the case satisfied the criteria and held that the non-NASD member could be joined in the arbitration. Id. at * 5.

{¶ 51} A similar result occurred in *Pruco Securities Corp. v. Montgomery* (Oct. 15, 2003), D.N.D. No. A1–03–55, 2003 WL 22383034. Specifically, the district court found that a non-NASD member could be joined as a "certain other" under Section 10201 because its interests were "directly related to and congruent" to those of a member. 2003 WL 22383034, * 5. See, also, *Westervelt v. Bayou Mgt., L.L.C.* (Nov. 4, 2003), E.D.La. Civ. No. 03–0860, 2003 WL 22533672, *2–3 (requiring non-NASD members to arbitrate when they were sufficiently immersed in the litigation to be considered "certain others" under NASD rules); *Parrott v. Pasadena Capital Corp.* (Mar. 3, 1998), S.D.N.Y. No. 96 CIV 6243(JFK), 1998 WL 91076 (holding that corporate entities who are closely affiliated with NASD member may be joined in arbitration as "certain others"); and *Thomas James Assoc., Inc. v. Jameson* (C.A.2, 1996), 102 F.3d 60, 68 (employees who are non-signatories to NASD are properly joined in arbitration as "certain others").

{¶ 52} The threshold inquiry in this context concerns the identity of the parties who may compel arbitration. Once arbitration has been requested by an appropriate party (a member, person associated with a member, etc.), the next task is to decide what parties can be included. For example, in *Ladd* (2001), 433 Mass. 240, 741 N.E.2d 47, the plaintiff was a NASD member, but the defendant, who sought to compel the plaintiff to arbitrate, was not. Id., 433 Mass. at 240–241, 741 N.E.2d 47. A subsidiary of the defendant was a NASD member, and the defendant argued first that it could compel arbitration because it was a "person associated with a member." Id., 433 Mass. at 242, 741 N.E.2d 47. The court rejected this argument, again, because of the amendments to the NASD Code that confined "associated persons" to natural persons, not entities. Id., 433 Mass. at 243–245, 741 N.E.2d 47.

{¶ 53} Alternatively, the defendant argued that it could compel arbitration because it qualified as a "certain other." However, the court also rejected this claim, stating:

{¶ 54} "Although the rule contemplates that 'certain others' may be parties to an arbitration, it limits the persons who have power to compel arbitration to a 'member' or a 'person associated with a member.' There is no reference to 'certain others' on the list of persons who may insist on arbitration, nor is the term 'certain others' even defined in the rule. The reference to 'certain others'

as potential parties was intended to allow for joinder in the arbitration if there were nonmembers involved in a dispute between members and persons associated with members. * * * It does not give those 'certain others' the ability to compel arbitration." Id., 433 Mass. at 246, 741 N.E.2d 47.

{¶ 55} This is a correct interpretation. Section 10201 provides for arbitration of disputes "at the instance of (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member."

{¶ 56} The present case fits within the first group, i.e., it involves a request for arbitration by a member (Briarcliff) against another member (Securities). Because Briarcliff requested arbitration against another member, the pertinent issue was whether Financial and Advisory should be joined, i.e., compelled to arbitrate, as "certain others."

{¶ 57} The trial court did not address this point. Instead, the court simply referred the claims of Briarcliff and Securities to arbitration and placed the existing claims between Financial, Advisory, and Briarcliff on administrative stay pending the outcome of the arbitration. We think this is a matter the trial court should decide, because Financial and Advisory may be joined in the arbitration with Security if they fit the criteria for "certain others" as outlined in *McMahan*. We have already concluded that Securities was properly added as a party because it was integrally involved in the dealings of Financial and Advisory. While this seems at first glance to qualify Financial and Advisory as "certain others" under *McMahan*, the record below was quite incomplete. For example, the record does not indicate the specific role these entities played in the securities industry, nor does it reveal whether Fidelity and Advisory may be considered instruments of Security. *McMahan*, 35 F.3d at 88.

█ {¶ 58} In deciding this latter issue, the Southern District of New York focused on various facts that revealed a close affiliation between the NASD member and the non-signatories, including the fact that the NASD member shared office space and was staffed with employees of the non-signatory entities. See *Parrott*, 1998 WL 91076, * 4. These facts are not dispositive of the issues but may be evidence of a close affiliation. Although inferences of a close affiliation may exist in the present case, the trial court should specifically rule on the matter, so that both sides can know which parties are to participate in the arbitration. And, because the record has been inadequately developed, the case must be remanded for a limited hearing on this issue.

█ {¶ 59} As a final matter, we note that appellants have raised two additional points. The first is that Ohio courts have refused to stay proceedings

between parties who lack arbitration agreements, even if other claims in the case may be arbitrable. This is a correct statement. See, e.g., *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, at ¶ 32. However, the pertinent provisions in this case are taken from federal law. Federal substantive law applies to state court proceedings, and to the extent that "state law would deny the arbitration of any claims arbitrable under federal law, the state law is preempted." *Champaign Landmark, Inc. v. Prince* (Oct. 23, 1998), Champaign App. Nos. 97 CA 28, 97 CA 29 and 97 CA 30, 1998 WL 735914, * 3, citing *Southland Corp. v. Keating* (1984), 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1. As we indicated, under the applicable federal law, the claims of Financial and Advisory would be subject to arbitration if they can be classified as "certain others" under Section 10201.

{¶ 60} Appellants' second point is that the trial court erred in staying litigation against appellee, John Kinder. In this regard, appellants claim that Kinder waived the right to arbitration by actively participating in the underlying litigation. However, the trial court did not issue a decision regarding Kinder, nor did it consider whether Kinder waived the right to arbitration. As a result, we will not rule on the matter. We do note that three factors are considered in deciding the waiver issue:

{¶ 61} "(1) [T]he time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.* (C.A.2, 2001), 252 F.3d 218, 229.

{¶ 62} Based on the preceding discussion, the assignment of error is sustained in part and overruled in part. We affirm the trial court's decisions to join Westminster Securities as a party, to stay the proceedings pending arbitration, and to overrule the motion to dismiss. However, we also reverse the decision in part and remand for a hearing on whether Westminster Financial Companies, Inc. and Westminster Advisory Corp. should be joined in the arbitration as "certain others" under Section 10201 of the NASD Code.

Judgment affirmed in part,
reversed in part
and cause remanded.

GRADY and FREDERICK N. YOUNG, JJ., concur.