OPINION
{¶ 1} Plaintiff-appellant, John B. Boggs, filed an intentional tort action against defendant-appellee, Columbus Steel Castings Co. ("CSC"), and John Does #1-10, as the result of sustaining serious personal injuries while performing work for CSC. CSC filed a motion to dismiss for lack of jurisdiction pursuant to Civ. R. 12(B)(1) or, in the alternative, motion to compel arbitration and stay proceedings. CSC contends that appellant signed a written agreement in which he expressly waived his right to file a lawsuit alleging intentional tort, but, rather, agreed to resolve his claims through mediation and/or arbitration. The trial court found CSC was an intended third-party beneficiary of the Dispute Resolution Plan ("DRP") that appellant had signed and granted CSC's motion to compel arbitration and the motion to stay the proceedings. The products liability action remained pending against the John Doe defendants. Appellant filed a notice of appeal and raises the following assignment of error:
The Trial Court Erred to the Substantial Prejudice of the Plaintiff-Appellant in Granting the Defendant-Appellee's Motion to Compel Arbitration and Stay Proceedings.
 {¶ 2} By the assignment of error, appellant contends that the trial court erred in granting CSC's motion to compel arbitration and stay proceedings.[1] At the time of the injury, appellant was employed by ELS, Inc., a professional employer organization. ELS is in the business of assigning employees to companies and providing related employment services. In February 2003, CSC and ELS entered into a Vendor Agreement, in which CSC, a steel forging plant, is referred to as "the Client" and ELS provides personnel services. (See Vendor Agreement, at 1, attached as an Exhibit to Defendant's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents.) ELS is the sole employee-leasing agency for CSC and operates an office at CSC to assign individuals to work for CSC. (Milligan affidavit, at ¶ 2.) In fact, ELS supplies services of advertising, interviewing, selecting process, testing, providing drug tests, physicals and placing people at CSC. (Malenick depo., at 11.) ELS representatives make hiring decisions. Id. All of CSC's employees are hired by ELS and assigned to CSC as co-employees, including CSC's chairman and CEO, Don Malenick, and CSC's President, Ron Heineman. (Eugene Easley, Jr. affidavit, at ¶ 3; Heineman depo., at 16, 22.)
 {¶ 3} ELS provides an alternative DRP for the benefit of its employer clients. ELS drafted a plan for CSC and CSC's counsel adjusted some of the language. (Heineman depo. at 20.) It is this alternative DRP, which is at issue in this case. Appellant contends that the DRP only applies to claims against ELS and CSC contends that it applies to claims against either or both ELS and CSC.
 {¶ 4} Appellant was hired by ELS and assigned to CSC on August 4, 2003. (Milligan affidavit, at ¶ 5.) During his orientation at the CSC worksite, he was provided the DRP by an ELS employee assigned as a CSC human resources representative and appellant signed an acknowledgement of receipt. (See Exhibit A to Milligan affidavit attached to Brief in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction or, in the alternative, Motion to Compel Arbitration and Stay Proceedings.) Appellant does not contest that he signed the DRP, nor does he contest its validity or enforceability. He contends that CSC is not a party to the DRP, and not an intended third-party beneficiary.
 {¶ 5} Appellant argues that the standard of review for this court is de novo and CSC contends that we determine whether the trial court abused its discretion. Generally, the standard of review for a decision denying or granting a motion to compel arbitration and stay proceedings is whether the trial court abused its discretion. Tinker v. Oldaker,
Franklin App. No. 03AP-671, 2004-Ohio-3316. In order to find that the trial court abused its discretion, we must find more than an error of law or judgment, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Most instances of an abuse of discretion result in decisions that are unreasonable as opposed to arbitrary and capricious. AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157. A decision that is unreasonable is one that has no sound reasoning process to support it. However, there is a split of authority and courts have applied a de novo review where questions of law are involved. Westminster Fin. Cos., Inc.v. Briarcliff Capital Corp., 156 Ohio App.3d 266, 270,2004-Ohio-782.[2] The construction and interpretation of contracts are matters of law. Latina v. Woodpath Development Co. (1991),57 Ohio St.3d 212, 214.
 {¶ 6} Courts construe contracts to give effect to the intent of the parties and such intent is presumed to be in the language used in the contract. Reida v. Thermal Seal, Inc., Franklin App. No. 02AP-308, 2002-Ohio-6968. If a contract is found to be ambiguous, a court will consider extrinsic evidence in an effort to give effect to the parties' intention. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635,638. If contract language is susceptible to two or more conflicting, but reasonable interpretations, it is ambiguous. United Tel. Co. of Ohio v.Williams Excavating, Inc. (1997), 125 Ohio App.3d 135, 153. A determination of the parties' intentions is a factual inquiry and a reviewing court must presume that the trial court's interpretation of the agreement regarding the parties' intentions is correct, and such a determination will be upheld if it is supported by some competent, credible evidence. Reida, supra.
 {¶ 7} The DRP could reasonably be interpreted to include CSC as an intended third-party beneficiary, thus, we find it ambiguous. We also find the trial court's determination that the parties intended CSC to be a third-party beneficiary supported by competent, credible evidence.
 {¶ 8} The trial court determined that CSC was an intended third-party beneficiary of the contract. Only a party to a contract or an intended third-party beneficiary may bring an action on a contract. Grant Thorntonv. Windsor House, Inc. (1991), 57 Ohio St.3d 158, 161. In Hill v.Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St.3d 36, 40, the Supreme Court of Ohio adopted the statement of law as found in Restatement of the Law 2d, Contracts (1981) 439-440, Section 302, as follows:
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
Comment e to Section 302 states:
"Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created. * * *"
In Norfolk Western Co. v. United States (C.A. 6, 1980), 641 F.2d 1201,1208, the United States Court of Appeals for the Sixth Circuit, applying Ohio law, explained the "intent to benefit" test, a test used to determine whether a third party is an intended or incidental beneficiary:
"* * * Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an `intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an `incidental beneficiary,' who has no enforceable rights under the contract.
"* * * [T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."
 {¶ 9} The third party need not be named in the contract, but must be contemplated by the parties and be sufficiently identified. Chitlik v.Allstate Ins. Co. (1973), 34 Ohio App.2d 193, 196. Comment a to the Reporter's Note to Restatement of the Law 2d, Contracts (1981) 439-440, Section 302 provides that a court should consider the language of the contract and the surrounding circumstances to determine the parties' intentions. In Anderson v. Olmsted Utility Equipment, Inc. (1991),60 Ohio St.3d 124, 129-130, the Supreme Court of Ohio examined the contract language and trial testimony regarding the purpose of the contract. In that case, the court determined that injured workers were intended beneficiaries of a contract between the city of Niles and Olmstead Utility Equipment, the supplier of a defectively remanufactured hydraulic aerial device.
 {¶ 10} The cover page of the DRP booklet provides, as follows:
 ELS Human Resource Solutions THE DISPUTE RESOLUTION PLAN for Columbus Steel Castings February, 2003 {¶ 11} The cover page also includes CSC's logo. The DRP provides the following relevant provisions:
The Dispute Resolution Plan ("the Plan") is intended to facilitate the prompt, fair, and inexpensive resolution of legal disputes between ELS, Inc. (the "Company") and its present and former employees, including applicants. The Plan is intended to create an exclusive mechanism for the final resolution of all disputes falling within its terms. * * *
* * *
B. Except as provided for herein, this Plan applies to any legal or equitable claim, demand or controversy, in tort, contract, under common law or statute, or otherwise alleging violation of any legal obligation, between persons bound by the Plan, which relates to, arises from, concerns or involves in any way:
1. This Plan;
2. The employment of an employee, including the application for and the terms, conditions, or termination of such employment;
3. Employee benefits or other incidents of employment with the Company, provided, however, that this Plan does not alter the terms, requirements or benefits (including any claims or internal appeals procedures) of any employee welfare benefit plan or deferred compensation, profit sharing, or pension plan sponsored by the Company; or
4. Any other matter related to the relationship between the employee and the Company including, by way of example and without limitation, allegations of discrimination based on race, sex, religion, age, ethnic origin, national origin, disability or handicap; sexual or other harassment; wage disputes; workers' compensation retaliation; intentional tort; defamation; infliction of emotional distress; invasion of privacy; promissory estoppel; wrongful discharge or wrongful termination; violation of public policy; breach of fiduciary duties; and breach of contract.
(DRP, at 10-12.)
 {¶ 12} The DRP sets forth a procedure for resolving work-related disputes, including first contacting the employee's manager concerning problems, the department's head and then the president. If the problem has not been resolved to the employee's satisfaction, the employee should proceed to internal mediation with the Human Resources Department and then to external mediation and, if necessary, binding arbitration, with the American Arbitration Association.
 {¶ 13} ELS's President, Ron Heineman, commissioned the DRP for CSC and testified, as follows:
The intent of the DRP to cover, or benefit, CSC is expressed on the cover of the DRP booklet provided to ELS employees assigned by ELS as co-employees to CSC, which states that the DRP is "for Columbus Steel Castings." "Columbus Steel Castings" is designated on the cover of the DRP by its corporate logo.
(Heineman affidavit, at ¶ 6.)
 {¶ 14} The DRP uses language referring to the "workplace," "manager," "department head" and "the President." All of these references are to CSC since all CSC employees are co-employees of ELS and CSC. CSC controls the manner and means of work of employees who are covered by the DRP, thus, as the trial court found, most of the claims subject to the DRP, would arise from appellant's work at CSC. (Decision at 11.) Appellant was hired and assigned to work at CSC and he was advised that the sole purpose of his employment was to work for CSC. (Milligan affidavit, at ¶ 6; Easley affidavit, at ¶ 7.) Eugene Easley, Jr., the Human Resource Representative of ELS and CSC at CSC, testified that he conducted appellant's orientation after he had been assigned to CSC and provided a copy of the DRP at that orientation. (Easley affidavit, at ¶ 6.) Easley testified that he understood that the DRP covered all claims against ELS and CSC by co-employees arising out of the CSC workplace. (Easley affidavit, at ¶ 5.) Based upon this evidence, we find that the trial court did not abuse its discretion in finding that CSC was an intended third-party beneficiary.
 {¶ 15} Appellant also argues that Ohio law prohibits applying arbitration agreements to employer intentional tort claims, citingScaglione v. Kraftmaid Cabinetry, Inc., Geauga App. No. 2001-G-2364, 2002-Ohio-6917. In Scaglione, an employee sued her employer alleging an employer intentional tort, but had signed an agreement with her employer to submit all claims, including intentional tort claims, to arbitration. The Eleventh District Court of Appeals determined that intentional torts are outside of the employer-employee relationship and any agreement controlling that relationship is not controlling in the area of employer intentional torts.
 {¶ 16} The Supreme Court of Ohio, however, based upon the merits, vacated the court of appeals' decision and dismissed the cause as being moot.[3] See Scaglione v. Kraftmaid Cabinetry, Inc., 101 Ohio St.3d 1401,2003-Ohio-7098. A vacated decision on the merits is not reliable authority. In this case, the DRP specifically covers intentional tort claims. Generally, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Memorial Hosp.v. Mercury Constr. Corp. (1983), 460 U.S. 1, 24-25, 103 S.Ct. 927. "Ohio and federal courts encourage arbitration to settle disputes." ABM Farms,Inc. v. Woods (1998), 81 Ohio St.3d 498, 500. A party cannot be compelled to arbitrate a dispute that it has not agreed to arbitrate, but any dispute regarding whether an issue falls within an arbitration clause should be resolved in favor of coverage. McGuffey, at 52. In McGuffey,
the Twelfth District Court of Appeals found that the arbitration agreement encompassed an employer intentional tort. R.C. Chapter 2711
does not preclude the arbitration of intentional torts. Thus, we find the trial court did not err in granting CSC's motion to compel arbitration and stay proceedings. Appellant's assignment of error is not well-taken.
 {¶ 17} For the foregoing reasons, appellant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KLATT and SADLER, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Although not raised by the parties as an issue, we note that the trial court may consider any relevant evidentiary materials and is not confined to the allegations of the complaint when determining its subject matter jurisdiction pursuant to a Civ. R. 12(B)(1) motion. McGuffey v.LensCrafters, Inc. (2001), 141 Ohio App.3d 44, 50.
[2] There has even been a split within an appellate panel. See Vanyov. Clear Channel Worldwide, 156 Ohio App.3d 706, 711, 2004-Ohio-1793, at fn.
[3] It would appear that the parties may have settled this matter.